## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**LOUIS HOLLOWAY by and through his**
**Co-General Guardians LARRY HOLLOWAY, Jr. and**
**CARLOS HOLLOWAY**                                                 **PLAINTIFF**

**V.**                                            **CIVIL ACTION NO. 2:18-cv-117-KS-MTP**

**MARION COUNTY, MISSISSIPPI,**
**LAURA STOGNER, SHERRY PENDARVIS, and JOHN**
**AND JANE DOES 1-100**                                          **DEFENDANTS**

### AMENDED COMPLAINT

*Jury Trial Demanded*

1.      This Complaint is brought by Larry Holloway Jr. and Carlos Holloway, brothers to Louis Holloway ("Plaintiff"), where Larry Holloway, Jr. and Carlos Holloway are collectively the Co-Guardians, acting by and through their undersigned counsel, against Marion County, Mississippi, Laura Stogner, Sherry Pendarvis, (hereinafter, "Defendants") and John and Jane Does 1-100.

### JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1343, as well as 42 U.S.C. § 1983.  Subject matter jurisdiction is appropriate in federal court since a federal question is raised pursuant to the 8th and 14th Amendments to the United States Constitution.

3.      Venue is appropriate in this Court under § 1391(b) and § 1392, as all acts and/or omissions occurred in Marion County, Mississippi, which is located within the Southern District of the United States District Court, Eastern Division.

### PARTIES

4.      Plaintiff at all times material to this Complaint, is an adult who was incarcerated at the Marion Walthall County Regional Correctional Facility ("MWCRCF").  Substantial acts,

omissions, and events that caused the Plaintiff's injuries took place in Marion County, Mississippi.  At the time of the incident which gives rise to this Complaint, Plaintiff was a 35-year old citizen of the State of Mississippi, and a pretrial detainee incarcerated at the MWCRCF. Due to the injuries he received at MWCRCF, the Plaintiff is now in a vegetative state. As a result, his brothers, Carlos Holloway and Larry Holloway, Jr., (Guardians") were appointed as co-guardians. The Co-Guardians are bringing this lawsuit on behalf of Louis Holloway. A true and correct copy of the order appointing Carlos and Larry as co-guardians is attached as Ex. "A".

5.    Defendant, Marion County is located within the Southern District of the United States District Court, Eastern Division.  Marion County, by and through the Marion County Sheriff's Department, manages and operates the MWCRCF.   MWRCRCF is a regional correctional facility created by statute and is located at 503 S Main St, Columbia, Mississippi. Marion County and its duly elected sheriff, Berkley Hall, have the responsibility for providing humane care and treatment consistent with all constitutional and American Correctional Association (ACA) standards. At all times material, Marion County had a non-delegable duty to provide detainees, including Plaintiff, with necessary medical care and treatment from qualified medical providers that meets a community standard of care. To the extent Marion County delegated authority to make decisions to other healthcare providers, either expressly or by default, the policies and customs of those healthcare providers become the policies and customs of Marion County, and Marion County is liable for their actions if the policy proves unconstitutional. See ***Ancata v. Prison Health Servs., Inc***., 769 F.2d 700, 705-706 (11th Cir. 1985) and cases cited therein.  Defendant Marion County is subject to the in personam jurisdiction of this Court by service of process upon its Board of Supervisors, by and through the Marion County Chancery Court Clerk, Cass Barnes, who also serves as the Clerk of the Marion County Board of Supervisors, located at the Marion County Chancery Courthouse, 250 Broad

2

Street, Suite 2, Columbia, Mississippi.

6.      Defendant, Laura Stogner ("Stogner"), is licensed to practice nursing in Mississippi. Stogner was hired by Marion County to provide medical treatment to inmates under the supervision of Marion County and Sheriff Hall.   A Notice of claim was sent to Stogner pursuant to Miss. Code. Ann. 15-1-36 a copy of which is attached as Ex. "B". Stogner was working in her capacity as a nurse at MWCRCF on the dates and times set forth in this lawsuit. Stogner was at all times acting under color of state law with the permission and consent of Marion County and Sheriff Hall and within the course and scope of her employment. Stogner may be served process at her residence which is 22614 Highway 98 East, Columbia, Mississippi.

7.      Defendant, Sherry Pendarvis ("Pendarvis"), is a nurse licensed to practice in Mississippi. Pendarvis was hired by Marion County to provide medical treatment to inmates under the supervision of Marion County and Sheriff Hall.   A Notice of Claim was sent to Pendarvis pursuant to Miss. Code. Ann. 15-1-36 a copy of which is attached as Ex. "C". Pendarvis was working in her capacity as a nurse at MWCRCF on the dates and times set forth in this lawsuit. Pendarvis was at all times acting under color of state law with the permission and consent of Marion County and Sheriff Hall and within the course and scope of her employment. She may be served process at her residence which is 190 Stone County Road, Wiggins, Mississippi 39577.

8.      Plaintiff is ignorant as to the identities of Defendant John and Jane Does 1-100 who are unknown officers, employees, agents, and or servants of the Marion County and/or Defendants.  As their identities are learned, the Plaintiff will amend this Complaint to allege their true names and allege that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages, as alleged herein, were proximately caused by their misconduct.  Guardians, upon information and belief, assert that the

3

Doe Defendants were the officers, agents, servants, and employees of the Defendants herein, and were at all times acting under color of law with the permission and consent of Defendants within the course and scope of their respective employment.

## FACTS

9.      On or about September 19, 2016, Plaintiff was arrested for DUI 2nd offense and disorderly conduct by the Columbia, Mississippi Police Department. The Plaintiff was transported to the MWCRCF.  While being booked in by Deputy Jacob Bennett ("Bennett") on September 20, 2016 at 12:54 a.m., Plaintiff advised Bennett that he had seizures and that he had recently had brain surgery. The Plaintiff further advised that he was currently prescribed tetrytol, phenobarbital, and Norco 10 for his seizures.  The Plaintiff also notified Bennett that without his medication, he would have seizures.  The Plaintiff was booked in and placed in general population. He did not receive any further medical screening nor was he seen by any healthcare provider.

10.   On September 20, 2016 at approximately 7:00 a.m., Plaintiff was found lying on the floor inside cell number PT-5.  Sergeant Mays and the officer in charge, Cameron Summerford ("Summerford") entered the cell to check on Plaintiff.  The Plaintiff advised both officers that he was having seizures.  He was then placed in a wheelchair and transported to holding cell 2 where he was placed on medical watch.  Pendarvis checked on the Plaintiff and noted in her medical chart that he needed no further medical attention and that he was to remain on medical watch until further notice.  The MWCRCF did not have any seizure medication to administer to the Plaintiff nor was there any effort to obtain any. Instead, the Plaintiff advised jail personnel that he would have a family member bring his medication to the facility. After suffering this first seizure, the Plaintiff was never seen by a doctor or taken to a hospital for testing. Pendarvis and other Doe Defendants were deliberately indifferent to the Plaintiff's medical needs by not

4

transferring him urgently to a hospital.

11.     All three of the Plaintiff's medications were delivered to the jail on September 20, 2016 at approximately 10:15 a.m. and administered to him.  The Plaintiff only had eight (8) Vimpat pills which he was required to take twice daily.

12.     On September 21, 2016, the nurses reported that the Plaintiff would call his girlfriend and she would get more of the Vimpat filled and bring it to him.  Due to his medical condition, the Plaintiff was moved to cell LID-1 so that he could have a bottom bunk.  Medical staff and jail officials, aware of the likelihood of more seizures, feared that if the Plaintiff was placed on an upper bunk and had a seizure he would fall off the bunk. Despite this subjective awareness, the Plaintiff was not taken to a hospital or seen by a medical doctor.

13.     The Plaintiff's girlfriend could not obtain the Vimpat so on September 22, 2016 medical personnel placed an order for the Vimpat on behalf of the Plaintiff. However, the pharmacy with which the order was placed informed medical personnel that Vimpat was out of stock. Marion County's medical personnel acted with deliberate indifference by failing to check with any other pharmacy, hospital or medical provider for this medication. The Plaintiff once again advised the nurses that he would ask his girlfriend to have the Vimpat prescription filled.

14. The Plaintiff was administered his last Vimpat pill on September 23, 2016 at 5:00 p.m. It is well-documented that cessation of Vimpat can cause seizures. Stogner, Pendarvis, and other Doe Defendants acted with deliberate indifference by not transferring the Plaintiff to a hospital when they ran out of the Vimpat so they he could be properly monitored in a hospital setting.

15.     On September 24, 2016, the Plaintiff was moved out of the medical cell to make room for another inmate who had fallen. The Plaintiff was moved to general population and placed in a lock down cell.  The Defendants acted with deliberate indifference by moving the

Plaintiff out of medical watch when it was previously noted that he required to be under medical watch and further by knowing he was not taking his prescribed seizure medications, and therefore likely to have additional seizures.

16.     On September 25, 2016 at approximately 8:30 a.m., Deputy Dement and Stogner were conducting medical passes when Stogner found Plaintiff unconscious in his cell after suffering a seizure. Plaintiff was found lying half way off the foot of his bed face down.  Deputy Dement and Stogner entered lockdown 13 and moved Plaintiff to the "code blue" floor where all available officers responded to the code.    An ambulance was called to the facility and transported Plaintiff to Marion General Hospital ("MGH").

17.  When Plaintiff arrived at MGH, he was already in a vegetative state and was placed in the intensive care unit. The Plaintiff has been in hospitals since September 25, 2016. Plaintiff remains in a vegetative state and is currently hospitalized at Methodist Specialty Care Center in Flowood, Mississippi.

## 1983 CAUSES OF ACTION:

### FIRST 1983 CLAIM: UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT

18.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 17 hereinabove.  The Defendants, acting by and through their elected and appointed officials, acted with deliberate indifference in the allegations listed in Paragraphs 1 through 17.

19.     Pursuant to Mississippi Code Annotated §47-5-931, regional correctional facilities shall be designed, constructed, operated and maintained in accordance with ACA standards, and shall comply with all constitutional standards of the United States and the State of Mississippi, and with all court orders that may now or hereinafter be applicable to the facility. Further, the sheriff of the county in which the facility is located is designated as the Chief Corrections Officer of the regional jail. As such, Marion County Sheriff Berkley Hall ("Hall") is

6

the Chief Corrections Officer of the MWCRCF. Derek Mingo ("Mingo") was acting as Warden, at all times pertinent to this action.  Both Hall and Mingo had the responsibility and duty to supervise, oversee and control the training and job performance of jail staff and the operation of the jail including medical services.  Hall and Mingo had the duty to see that the jail was maintained in a safe and sanitary condition, suitable for human occupation and compliant with constitutional requirements.  Both had the duty to ensure that the jail officials, jailers, nurses, and other jail staff acted in compliance with the laws and Constitutions of the State of Mississippi and of the United States, and did not deprive inmates of their rights guaranteed under the United States Constitution and laws.  This included the duty to ensure that the conditions of inmate confinement did not deprive inmates of their right to reasonable, adequate and timely medical care and did not otherwise impose constituted cruel and unusual punishment.  This likewise included a duty to see that the conditions of confinement did not impose *any punishment on pretrial detainees.*

20.     At all relevant times herein, Sheriff Hall and Warden Mingo acted under the color of state law, under the cloak of their respective authority as warden, and as agents, servants, employees and officials of Defendant, Marion County.

21.     At all relevant times herein, Hall and Mingo enjoyed final policymaking authority over the policies, practices and customs at the MWCRCF, and displayed and exercised this authority over the policies, practices and customs at the MWCF. At times Hall and Mingo delegated this authority to other Marion County employees and agents, including but not limited to, the Defendants Stogner and Pendarvis.  Plaintiff asks that the Court take judicial notice that Hall and Mingo enjoyed final policymaking authority for the MWCRCF.

22.     Marion County, by and through Hall, Mingo, Stogner, Pendarvis, and other Doe Defendants, maintained and operated the MWCRCF in such a manner that the conditions of

7

confinement resulted in a comprehensive and pervasive pattern of serious deficiencies in providing for the basic human needs of the inmates detained in the MWCRCF in every aspect.

23.     The conditions of confinement also included a jail deficient that it was not suitable for human confinement.  These conditions resulted in the infliction of punishment on each and all of the inmates who were forced to live there, including the Plaintiff.  Such conditions violated Plaintiff's' due process rights, including the specific right, as a pretrial detainee, not to be punished through the conditions of his confinement, in violation of the Fourteenth Amendment to the United States Constitution.

24.     The conditions of confinement also included many policies, practices, and customs that deprived most, if not all, inmates, including the Plaintiff, of their right to reasonable, adequate and timely medical care, again, specifically their right not to be punished during their pretrial confinement.  These included policies, customs and practices, whether written or unwritten, that were expressly announced, sanctioned and/or implemented by Hall, Mingo, Pendarvis, Stogner and other Doe Defendants in their position as the final policymakers of the MWCRCF.  They also included policies, practices and customs which, though possibly not formally adopted, had become so widespread, well-settled and deeply imbedded in their application, use, employment and acceptance in the jail to have become the policies of the MWCRCF and of these Defendants.

25.     Some of the policies, customs and practices, which constituted elements of the conditions of confinement in the MWRCF, included, but were not limited to:

A)     Regularly denying, delaying or interfering with inmate requests for medical care;

B)     Ignoring, delaying or failing to promptly comply with the treatment orders of the doctors;

C)     Refusing to accommodate the known medical conditions of inmates;

D)      Not promptly providing reasonable medical care and treatment;

E)      Failing to have a doctor available to provide treatment for inmates on to diagnose and treat their medical conditions;

F)      Failing to transport inmates to hospitals for treatment of serious medical needs.

26.      The policies, practices and customs set forth in the preceding paragraph, as well as others which may come to light in the course of this litigation, resulted in numerous, repeated and pervasive deprivations of inmates' rights to reasonable, adequate and timely medical care, under both the Eighth and Fourteenth Amendments, at the MWCRCF.

27.      Each of the foregoing policies, customs and practices were implemented, approved, ratified, known and/or constructively known by the officials of Marion County, including Hall, Mingo, Stogner, Pendarvis and other Doe Defendants during the Plaintiff's confinement.

28.      Each of the foregoing policies, customs and practices constituted elements of the conditions of Plaintiff's confinement and, both individually and in combination, were moving forces in the deprivation of Plaintiff's respective rights including his right to reasonable, adequate and timely medical care under the Eight and Fourteenth Amendment, his right as a pretrial detainee and not to be punished under the Fourteenth Amendment.

29.      Defendants Marion County, Pendarvis, Stogner and the Doe Defendants are jointly and severally liable for Plaintiff's injuries. Plaintiff seeks recovery of all compensatory damages to which the he is entitled as a result of the conditions of his confinement, and the damages he suffered therefrom.  Plaintiff further seeks recovery of punitive damages from Defendants Stogner, Pendarvis and other Doe Defendants in their individual capacities for their callous and reckless disregard for the rights and welfare of Plaintiff's medical needs.

## SECOND 1983 CLAIM: EPISODIC ACTS OR OMISSIONS

30.    Plaintiff incorporates all allegations set forth in Paragraphs 1 through 29 hereinabove.

31.    Marion County, Hall, Mingo, Stogner, Pendarvis and other Doe Defendants maintained and operated a jail in such a manner as to cause the pervasive deprivation of inmate constitutional rights in every respect and at every level.  Plaintiff was forced to live in this jail and endure the action and inaction of its officials, as well as the jailers and jail staff acting in accordance with jail policies, customs and practices, under color of law, exhibiting callous and deliberate indifference, in depriving him of his rights guaranteed under the Constitution and laws of the United States.

32.    Marion County, Hall, Mingo, Stogner, Pendarvis, as well as other jailers and jail staff acting pursuant to jail policy, practice and customs, created and required inmates to live in a jail that was deficient in so many respects that it was not suitable for human confinement.  These actions resulted in the infliction of punishment on each of the inmates who were forced to live there, including Plaintiff.

33.    As shown hereinabove, Marion County, by and through its policymakers, implemented and permitted many other policies, practices and customs that deprived most, if not all, inmates, including Plaintiff, of their right to reasonable, adequate and timely medical care and especially their right not to be punished during their pretrial confinement.  These included policies, customs and practices, whether written or unwritten, that were expressly announced, sanctioned and/or implemented by Plaintiff as final policymaker of the MWCRCF.  They also included policies, practices and customs which, though possibly not formally adopted, had become so widespread, well-settled and deeply imbedded in their application, use, employment and acceptance in the jail to have become the policies of these Defendants.

10

34.     Some of the policies, customs and practices of the MWCRCF included, but were not limited to:

A)     Regularly denying, delaying or interfering with inmate requests for medical care during lockdowns;

B)     Regularly denying or delaying all inmate requests and doctor's orders for inmate medical care through a specialist;

C)     Ignoring, delaying or failing to promptly comply with the treatment orders of the  jail doctor and/or outside physicians;

D)     Refusing to accommodate the serious medical conditions of inmates;

E)     Refusing to deliver an inmate's medication to that inmate; and

F)     Refusing to move seriously ill patients to a hospital or other location where they can receive appropriate care, instead leaving them in a jail cell and leaving no one but their cellmates to care for them.

35.     The policies, practices and customs set forth in the preceding paragraph, as well as others which may come to light in the course of this litigation, resulted in numerous, repeated, pervasive and persistent deprivations of inmates' rights to reasonable, adequate and timely medical care, under both the Eighth and Fourteenth Amendments, at the MWCRCF.  Plaintiff suffered numerous deprivations of his right to reasonable, adequate and timely medical care due to the actions of these policymakers, their policies, the jailers and the jail staff.

36.     Marion County and its employees/agents along with Stonger and Pendarvis acted with deliberate indifference and callous and reckless disregard for the rights, welfare and medical needs of and other constitutional rights of the Plaintiff.

37.     Jailers and jail staff acted, or failed to act, pursuant to the official policies, customs and practices of Marion County and its policymakers, or at the direction of and with the approval of these officials, in depriving the Plaintiff of his rights as described herein.  The policies, practices and customs were moving forces in the action and inaction for Stonger,

11

Pendarvis, jailers, and jail staff, and these individuals acted with deliberate indifference to the rights, welfare and medical needs of and other constitutional rights of the Plaintiff.

38.     The deprivation of Plaintiff's rights, as described herein, directly and proximately caused the Plaintiff to suffer severe physical and mental personal injury and damages.  These included permanent brain injury which has left Plaintiff in a vegetative state, excruciating pain and suffering, extraordinary mental and emotional pain and anguish, and significant disability and physical impairment which will necessitate continuous medical care and treatment for remainder of his life.

39.     Marion County, Stogner, Pendarvis and Doe Defendants   are jointly and severally liable for the Plaintiff's damages, Plaintiff seeks recovery of all compensatory damages to which he is entitled.  Plaintiff further seeks recovery of punitive damages from Stogner, Pendarvis and Doe Defendants in their individual capacities for their callous and reckless disregard for the rights and welfare of the Plaintiff's medical needs.

## THIRD 1983 CLAIM: DENIAL OF MEDICAL CARE

40.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 39 hereinabove.

41.     Marion County, Stogner, Pendarvis and other Doe Defendants failed to properly oversee and manage the Plaintiff's serious health condition and thereby directly caused Plaintiff's current vegetative condition.  In doing so, Marion County, Stogner, Pendarvis and other Doe Defendants violated clearly established constitutional rights, including but not limited to:

a)      Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

b)      Plaintiff's right not to be deprived of liberty without due process of law;

12

      c)     Plaintiff's right to be safe and protected from injury while in custody; and

      d)     Plaintiff's right to necessary medical treatment for his very serious medical condition.

42.     By their failure to provide the Plaintiff with the known and medically necessary medications and care required to sustain his life, Defendants' actions deprived him of the rights secured for him by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

43.     As a direct and foreseeable result of Defendants' actions, Plaintiff has suffered serious permanent damages from which he will never recover. The Plaintiff will require 24 hour medical care for the rest of his life.

## FOURTH 1983 CLAIM: FAILURE TO TRAIN, SUPERVISE AND STAFF

44.     Marion County ordered, ratified, or knowingly acquiesced in having nurses, including but not limited to Stogner and Pendarvis, perform constitutionally deficient initial health assessments of inmates, including but not limited to an assessment of the Plaintiff that, *inter alia*, failed to provide the Plaintiff with his seizure medications for his known seizure disorder, which poses an obvious substantial risk of serious harm or death, and noted he had no significant medical issues despite his history of seizures and the seizure he had in the jail, all of which pose a substantial risk of serious harm or death. The nurses then failed to contact a physician as required by the community standard of care. Either the nurses did not receive the appropriate training, supervision, and/or oversight, or there was an unconstitutional policy or custom requiring and/or knowingly acquiescing in allowing nurses to conduct constitutionally-inadequate intake examinations that lead to the denial of necessary medical treatment for serious medical needs, and that posed an obvious substantial risk of serious harm. In addition, Defendants had a policy or custom of routinely denying detainees, including the Plaintiff, with

access to medical treatment by a qualified medical provider, having nurses practice outside the scope of their licenses by failing to fulfill their gatekeeper roles, and denying detainees necessary and life-saving medications as described *Supra*.

45. There are systemic and widespread deficiencies by multiple providers in the medical care and treatment by nurses at the MWCRCF, which reflect an official policy or custom of deliberate indifference to serious medical needs, and which was the moving force behind Plaintiff's injuries. The need for training, supervision, and adequate staffing of the medical department to avoid the risk of serious injury and death from life threatening illness, including but not limited to seizures was obvious. Based on information and belief, Marion County purposefully failed to adequately staff and/or train and/or supervise staff to provide detainees, including the Plaintiff, with access to medical treatment by a qualified medical provider for serious medical needs that posed a substantial risk of serious harm, all of which was the moving force in causing the Plaintiff's injuries and damages. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

46.     Marion County and its policymakers maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied an unconstitutional policy or custom of denying detainees, including the Plaintiff access to medical care and treatment by a qualified medical provider for serious medical needs. The deficiencies were so widespread and ubiquitous as to affect all inmates with serious medical needs at the MWCRCF.

47.     Access to medical care for serious medical needs constitutes a usual and recurring situation with which officers and medical staff must deal, and for which it is necessary they receive training, supervision, and oversight. The need for more or different training, discipline, and supervision was so obvious, and the inadequacy so likely to result in a violation of constitutional rights, that the policy makers of Marion County can reasonably be said to have

14

been deliberately indifferent to the need.  The inadequate training, inadequate discipline and inadequate supervision, demonstrates a deliberate indifference on the part of the Defendants towards detainees and prisoners.

48.     The Defendants had a policy, custom, and practice of allowing or requiring nurses and/or medical providers to purposefully and deliberately deny detainees including the Plaintiff medications and access to a qualified medical provider for necessary medical care and treatment for serious medical conditions, thereby creating an atmosphere where such behavior was accepted, approved and ratified, in reckless disregard and deliberate indifference to the health and welfare of persons taken into custody, including the Plaintiff.

49.     There was a direct causal link between the constitutional deprivations as aforesaid, and the inadequate training, inadequate discipline and inadequate supervision, and/or unconstitutional policies or customs of Marion County and its policymakers.

50.     Each Defendant's conduct was a direct cause of Plaintiff's injuries and damages, which are indivisible, resulting in joint and several liability.

51.     Marion County's unconstitutional conduct caused Plaintiff's injuries and damages as set forth in herein in an amount to be proved at the time of trial.

## FIFTH 1983 CLAIM: RATIFICATION

52.     Sheriff Hall and the other policymakers specified herein were advised about the Plaintiff's incident. Sheriff Hall and other policymakers ignored evidence of widespread disregard of policies and procedures intended for the protection of inmates including the Plaintiff, and systemic deficiencies that violated the Plaintiff's constitutional rights. Based on information and belief, not one officer, supervisor, nurse or any other person was disciplined, considered for discipline, or even retrained on policies intended for the protection of inmates. Instead, the policymakers approved the actions of the jailers and nurses and therefore ratified those actions.

53.     Through these acts and omissions of ratification, Marion County policymakers were deliberately indifferent to the Plaintiff's constitutional rights as set forth herein. A plaintiff can establish a municipal liability claim by showing that a final municipal policymaker approved an investigation that was "so inadequate as to constitute a ratification" of the misconduct. *Wright v. City of Canton*, 138 F. Supp.2d 955, 966 (N.D. Ohio 2001). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). An isolated decision by a municipal official that is not intended to control future decisions can nonetheless give rise to municipal liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).

54.     The ratification caused Plaintiff injuries and damages in whole or in part as set forth herein.

## MEDICAL MALPRACTICE

55.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 54 hereinabove.

56.     Stogner, Pendarvis and the Doe Defendants were negligent and/or grossly negligent in failing to properly diagnose and treat Plaintiff and/or transfer him to a hospital for appropriate diagnosis and treatment in the face of his obvious serious medical needs.

57.     Stogner, Pendarvis, and the Doe Employees were acting within the course and scope of their employment.    MWCRCF is liable for the acts and omissions of these Doe Defendants pursuant to the Mississippi Medical Malpractice Statute. If the nurses are determined not to be employees of MWCRCF then Stogner, Pendarvis and the Doe Employees are personally liable to the Plaintiff.

16

58.     Stogner, Pendarvis and Doe Defendants breached their duties to Plaintiff by failing to properly diagnose and treat him despite his ever-worsening physical symptoms, especially in light of his well-documented medical history, of which they were made aware. Stogner, Pendarvis and Doe Defendants failed to exercise the degree of care, skill and learning expected of reasonably prudent health care providers in the State of Mississippi acting in the same or similar circumstances. These Defendants committed medical malpractice under the law by failing to diagnose and treat Plaintiff. This medical malpractice directly and proximately resulted in the harms and damages alleged herein.

## NEGLIGENCE/GROSS NEGLIGENCE

59.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 58 hereinabove.

60.     At all times relevant herein, Stogner, Pendarvis and other Doe Defendants had a duty to exercise ordinary care for the inmates at MWCRCF, including the Plaintiff. Stonger, Pendarvis, and other Doe Defendants breached that duty by failing to use the ordinary care that a reasonable person would use to avoid and prevent injury to others, i.e. in the case *sub judice,* to provide the appropriate, reasonable and necessary medical care to accomplish same- the failure of which led directly to the incontrovertible permanent damage sustained by the Plaintiff. This breach was so egregious as to amount to gross negligence.

61.     The Plaintiff's current condition was the reasonably foreseeable outcome of these acts and omissions. These acts and/or omissions were substantial factors in causing his vegetative state, and the damages suffered by the Plaintiff.

## PUNITIVE DAMAGES

62.     The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 61 hereinabove.

63.     Stogner, Pendarvis and Doe Defendants 1-100's, in their individual capacities, acted in complete disregard for the safety of the Plaintiff by acting in a negligent and/or grossly negligent manner as previously described herein.   The actions of these Defendants warrant punitive damages.

64.     Stogner, Pendarvis, and the Doe Defendants' actions in their individual capacities exhibited gross negligence and direct disregard of the safety of the Plaintiff.   Punitive damages should be awarded against these Defendants.   Defendants' tortious actions caused the Plaintiff to suffer seizures which has led to him becoming a vegetable.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Guardians, on behalf of the Plaintiff, request that upon a jury trial of this cause, the Court will award all relief due the Plaintiff as set forth herein, including but not limited to the following:

A.     Order that the Defendants pay the Plaintiff a sum in excess of $75,000 as compensatory damages arising from the aforesaid misconduct of Defendants as set forth herein, and enter judgment against Defendants and in favor of the Plaintiff in the amount of $7,500,000.00, or in such amount as found due and owing by the jury and/or this Court;

B.     Order that the Defendants pay to the Plaintiff a sum in punitive damages sufficient to deter these Defendants and others similarly situated from like conduct in the future;

C.     Retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendants to file such reports as the Court deems necessary to evaluate such compliance;

D.     Order the Defendants to pay Plaintiff's costs and expenses, including expert witness fees and reasonable attorney's fees, and prejudgment interest on all amounts found due

and owing, including, but not limited to, those attorney's fees found properly awardable pursuant to 42 U.S.C. § 1988(b); and

      E.     Grant such other and further relief, of either an equitable or legal nature, to the Plaintiff's as the Court deems just and proper.

      RESPECTFULLY SUBMITTED, THIS the 10th day of July, 2018.

                    LOUIS HOLLOWAY, BY AND THROUGH HIS CO-GUARDIANS, LARRY HOLLAWAY, JR. AND CARLOS HOLLAWAY

                    BY:    /s/ Charles R. Mullins
                             CHARLES R. MULLINS

OF COUNSEL:
CHARLES R. MULLINS (MB# 9821)
MERRIDA (BUDDY) COXWELL (MB# 7782)
COXWELL & ASSOCIATES, PLLC
Post Office Box 1337
Jackson, Mississippi 39215-1337
Telephone: (601) 948-1600
Facsimile: (601) 948-1600
chuckm@coxwelllaw.com
merridac@coxwelllaw.com

Carlos E. Moore, MSB #100685
TUCKER / MOORE GROUP, LLP
306 Branscome Drive
Grenada, MS 38902-1487
Telephone: (662) 227-9940
Facsimile: (662) 227-9941
carlos@tuckermoorelaw.com

Willie Abston, MSB #9935
Abston Law Firm
1307 Airport Road, Suite 1C
Flowood, MS 39232
Telephone: (601) 487-8839
Facsimile: (601) 487-8667
willie.abston@abstonlaw.com

***Attorneys for Plaintiff***

## <u>CERTIFICATE OF CONSULTATION</u>

The undersigned attorney has reviewed the facts of this case and has consulted with at least one (1) expert, pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Evidence, who is qualified to give expert testimony as to a standard of care or negligence and whom the undersigned attorney reasonably believes is knowledgeable in the relevant issues involved.  The undersigned attorney has concluded on this basis for the commencement of such action.

BY:   <u>/s/ Charles R. Mullins</u>
         CHARLES R. MULLINS (MB# 9821)
         COXWELL & ASSOCIATES, PLLC

20