## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**LARRY HOLLOWAY, Jr.,**
**CARLOS HOLLOWAY, and**
**THE ESTATE OF LOUIS HOLLOWAY**                                         **PLAINTIFFS**


**V.**                                                    **CIVIL ACTION NO. 2:18-cv-117-KS-MTP**

**MARION COUNTY, MISSISSIPPI,**
**JASON DEMENT individually and as a Deputy of**
**Marion County, KEVIN LEWIS individually and as a**
**Deputy of Marion County, JACOB BENNETT individually**
**and as a Deputy of Marion County and JOHN**
**AND JANE DOES 1-100**                                                   **DEFENDANTS**

## AMENDED COMPLAINT

### *Jury Trial Demanded*

1.  This Complaint is brought by Larry Holloway Jr. and Carlos Holloway, individually and on behalf of the Estate of Louis Holloway, brothers to the Decedent Louis Holloway ("Decedent"), where Larry Holloway, Jr. and Carlos Holloway are collectively the Plaintiffs, acting by and through their undersigned counsel, against Marion County, Mississippi, Jason Dement individually and as a Deputy of Marion County, Kevin Lewis individually and as a Deputy of Marion County, Jacob Bennett individually and as a Deputy of Marion County (hereinafter, "Defendants") and John and Jane Does 1-100.

## JURISDICTION AND VENUE

2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1343, as well as 42 U.S.C. § 1983.  Subject matter jurisdiction is appropriate in federal court since a federal question is raised pursuant to the 8th and 14th Amendments to the United States Constitution.

3.      Venue is appropriate in this Court under § 1391(b) and § 1392, as all acts and/or omissions occurred in Marion County, Mississippi, which is located within the Southern District of the United States District Court, Eastern Division.

## PARTIES

4.      The Decedent at all times material to this Complaint was an adult who was incarcerated at the Marion Walthall County Regional Correctional Facility ("MWCRCF"). Substantial acts, omissions, and events that caused the Decedent's injuries took place in Marion County, Mississippi.  At the time of the incident which gives rise to this Complaint, Decedent was a 35-year old citizen of the State of Mississippi, and a pretrial detainee incarcerated at the MWCRCF.  Due to the injuries he received at MWCRCF, the Decedent was in a vegetative state. As a result, his brothers, Carlos Holloway and Larry Holloway, Jr., (Guardians") were appointed as co-guardians. The Co-Guardians filed this lawsuit on July 10, 2018, on behalf of Louis Holloway. The Decedent died on November 16, 2019.  As a result, Carlos Holloway and Larry Holloway, Jr. were substituted as the proper parties in place of the Decedent, on November 22, 2019.

5.      Defendant, Marion County is located within the Southern District of the United States District Court, Eastern Division.  Marion County, by and through the Marion County Sheriff's Department, manages and operates the MWCRCF.  MWCRCF is a regional correctional facility created by statute and is located at 503 S Main St, Columbia, Mississippi. Marion County and its duly elected sheriff, Berkley Hall, have the responsibility for providing humane care and treatment consistent with all constitutional and American Correctional Association (ACA) standards. At all times material, Marion County had a non-delegable duty to provide detainees, including Plaintiff, with necessary medical care and treatment from qualified

medical providers that meets a community standard of care. To the extent Marion County delegated authority to make decisions to other healthcare providers, either expressly or by default, the policies and customs of those healthcare providers become the policies and customs of Marion County, and Marion County is liable for their actions if the policy proves unconstitutional. See *Ancata v. Prison Health Servs., Inc*., 769 F.2d 700, 705-706 (11th Cir. 1985) and cases cited therein.  Defendant Marion County is subject to the in personam jurisdiction of this Court by service of process upon its Board of Supervisors, by and through the Marion County Chancery Court Clerk, Cass Barnes, who also serves as the Clerk of the Marion County Board of Supervisors, located at the Marion County Chancery Courthouse, 250 Broad Street, Suite 2, Columbia, Mississippi.

6. Upon information or belief, Defendant Jacob Bennett ("Bennett"), is an adult resident citizen of Marion County, Mississippi who may be served with process at his residence or place of employment.

7. Upon information or belief, Defendant Jason Dement ("Dement"), is an adult resident citizen of Marion County, Mississippi who may be served with process at his residence or place of employment.

8. Upon information or belief, Defendant Kevin Lewis ("Lewis"), is an adult resident citizen of Marion County, Mississippi who may be served with process at his residence or place of employment.

9. Plaintiffs are ignorant as to the identities of Defendant John and Jane Does 1-100 who are unknown officers, employees, agents, and or servants of the Marion County and/or Defendants.  As their identities are learned, the Plaintiffs will amend this Complaint to allege their true names and allege that each of the fictitiously named Doe Defendants are responsible in

some manner for the occurrences herein alleged, and that Plaintiffs' damages, as alleged herein, were proximately caused by their misconduct. Plaintiffs, upon information and belief, assert that the Doe Defendants were the officers, agents, servants, and employees of the Defendants herein, and were at all times acting under color of law with the permission and consent of Defendants within the course and scope of their respective employment.

## FACTS

10. On or about September 19, 2016, Decedent was arrested for DUI 2nd offense and disorderly conduct by the Columbia, Mississippi Police Department. The Decedent was transported to the MWCRCF. While being booked in by Deputy Jacob Bennett ("Bennett") on September 20, 2016 at 12:54 a.m., Decedent advised Bennett that he had seizures and that he had recently had brain surgery. The Decedent further advised that he was currently prescribed tetrytol, phenobarbital, and Norco 10 for his seizures. The Decedent also notified Bennett that without his medication, he would have seizures. The Decedent was booked in and placed in general population. He did not receive any further medical screening nor was he seen by any healthcare provider.

11. On September 20, 2016, at approximately 7:00 a.m., Decedent was found lying on the floor inside cell number PT-5. Sergeant Mays and the officer in charge, Cameron Summerford ("Summerford") entered the cell to check on Decedent. The Decedent advised both officers that he was having seizures. He was then placed in a wheelchair and transported to holding cell 2 where he was placed on medical watch. Nurse Sherry Pendarvis[1] ("Pendarvis") checked on the Decedent and noted in her medical chart that he needed no further medical attention and that he was to remain on medical watch until further notice. The MWCRCF did not have any seizure medication to administer to the Decedent nor was there any effort to obtain

---

[1] Pendarvis and Nurse Laura Stogner were dismissed from this case on the basis of qualified immunity. [73]

4

any. Instead, the Decedent advised jail personnel that he would have a family member bring his medication to the facility. After suffering this first seizure, the Decedent was never seen by a doctor or taken to a hospital for testing.

12. All three of the Decedent's medications were delivered to the jail on September 20, 2016, at approximately 10:15 a.m. and administered to him. The Decedent only had eight (8) Vimpat pills which he was required to take twice daily.

13. On September 21, 2016, the nurses reported that the Decedent would call his girlfriend and she would get more of the Vimpat filled and bring it to him. Due to his medical condition, the Decedent was moved to cell LID-1 so that he could have a bottom bunk. Medical staff and jail officials, aware of the likelihood of more seizures, feared that if the Decedent was placed on an upper bunk and had a seizure, he would fall off the bunk. Despite this subjective awareness, the Decedent was not taken to a hospital or seen by a medical doctor.

14. The Decedent's girlfriend could not obtain the Vimpat so on September 22, 2016, medical personnel placed an order for the Vimpat on behalf of the Decedent. However, the pharmacy with which the order was placed informed medical personnel that Vimpat was out of stock. Marion County's medical personnel acted with deliberate indifference by failing to check with any other pharmacy, hospital or medical provider for this medication. The Decedent once again advised the nurses that he would ask his girlfriend to have the Vimpat prescription filled.

15. The Decedent was administered his last Vimpat pill on September 23, 2016, at 5:00 p.m. It is well-documented that cessation of Vimpat can cause seizures. Jail officials acted with deliberate indifference by not transferring the Decedent to a hospital when they ran out of the Vimpat so they he could be properly monitored in a hospital setting.

16. On September 24, 2016, the Decedent was moved out of the medical cell to make room for another inmate who had fallen. The Decedent was moved to general population and

placed in a lock down cell. The Defendants acted with deliberate indifference by moving the Decedent out of medical watch when it was previously noted that he required to be under medical watch and further by knowing he was not taking his prescribed seizure medications, and therefore likely to have additional seizures.

17. According to MWCRCF policies and procedures, Bennett, Dement, and Lewis were required to check on the Decedent every 28-30 minutes to make sure he was alert and able respond because of his serious medical condition. In the final hours leading up to his last seizure, jail records indicate that Dement and Lewis checked on the Decedent at 5:39 a.m., (Lewis) 6:31 a.m., (Lewis) 7:01 a.m. (Dement) and 7:50 a.m. (Dement). The jailers noted that the Decedent was "lying in the bed" but does not state that he was alert and responsive. At 8:30 a.m., fifty (50) minutes after last being checked on, Dement and Stogner were conducting medical passes when Stogner found Decedent unconscious in his cell after suffering a seizure. The Decedent was found lying halfway off the foot of his bed face down. Jail records indicate that a code blue was called at 9:00 am but the nurse's notes indicate that the code blue was called at 8:36 a.m. Dement and Stogner moved the Decedent to the "code blue" floor where all available officers responded to the code. An ambulance was called to the facility and transported Plaintiff to Marion General Hospital ("MGH").

18. When the Decedent arrived at MGH, he was already in a vegetative state and was placed in the intensive care unit. The Decedent had been in hospitals since September 25, 2016. The Decedent remained in a vegetative state at Methodist Specialty Care Center in Flowood, Mississippi until he died, on November 16, 2019.

## **1983 CAUSES OF ACTION:**

### **FIRST 1983 CLAIM: UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT**

19.     Plaintiffs incorporate all allegations set forth in Paragraphs 1 through 18 hereinabove.  The Defendants, acting by and through their elected and appointed officials, acted with deliberate indifference in the allegations listed in Paragraphs 1 through 18.

20.     Pursuant to Mississippi Code Annotated §47-5-931, regional correctional facilities shall be designed, constructed, operated and maintained in accordance with ACA standards, and shall comply with all constitutional standards of the United States and the State of Mississippi, and with all court orders that may now or hereinafter be applicable to the facility. Further, the sheriff of the county in which the facility is located is designated as the Chief Corrections Officer of the regional jail. As such, Marion County Sheriff Berkley Hall ("Hall") is the Chief Corrections Officer of the MWCRCF. Derek Mingo ("Mingo") was acting as Warden, at all times pertinent to this action.  Both Hall and Mingo had the responsibility and duty to supervise, oversee and control the training and job performance of jail staff and the operation of the jail including medical services.  Hall and Mingo had the duty to see that the jail was maintained in a safe and sanitary condition, suitable for human occupation and compliant with constitutional requirements.  Both had the duty to ensure that the jail officials, jailers, nurses, and other jail staff acted in compliance with the laws and Constitutions of the State of Mississippi and of the United States and did not deprive inmates of their rights guaranteed under the United States Constitution and laws.  This included the duty to ensure that the conditions of inmate confinement did not deprive inmates of their right to reasonable, adequate and timely medical care and did not otherwise impose constituted cruel and unusual punishment.  This likewise included a duty to see that the conditions of confinement did not impose *any punishment on pretrial detainees.*

21. At all relevant times herein, Sheriff Hall and Warden Mingo acted under the color of state law, under the cloak of their respective authority as warden, and as agents, servants, employees and officials of Defendant, Marion County.

22. At all relevant times herein, Hall and Mingo enjoyed final policymaking authority over the policies, practices and customs at the MWCRCF, and displayed and exercised this authority over the policies, practices and customs at the MWCRCF. At times Hall and Mingo delegated this authority to other Marion County employees and agents, including but not limited to, the Defendants Dement, Lewis, and Bennett. Plaintiffs ask that the Court take judicial notice that Hall and Mingo enjoyed final policymaking authority for the MWCRCF.

23. Marion County, by and through Hall, Mingo, Dement, Lewis, Bennett and other Doe Defendants, maintained and operated the MWCRCF in such a manner that the conditions of confinement resulted in a comprehensive and pervasive pattern of serious deficiencies in providing for the basic human needs of the inmates detained in the MWCRCF in every aspect.

24. The conditions of confinement also included a jail deficient that it was not suitable for human confinement. These conditions resulted in the infliction of punishment on each and all of the inmates who were forced to live there, including the Decedent. Such conditions violated Decedent's' due process rights, including the specific right, as a pretrial detainee, not to be punished through the conditions of his confinement, in violation of the Fourteenth Amendment to the United States Constitution.

25. The conditions of confinement also included many policies, practices, and customs that deprived most, if not all, inmates, including the Decedent, of their right to reasonable, adequate and timely medical care, again, specifically their right not to be punished during their pretrial confinement. These included policies, customs and practices, whether written or unwritten, that were expressly announced, sanctioned and/or implemented by Hall,

Mingo, Dement, Lewis, and Bennett and other Doe Defendants in their position as the final policymakers of the MWCRCF. They also included policies, practices and customs which, though possibly not formally adopted, had become so widespread, well-settled and deeply imbedded in their application, use, employment and acceptance in the jail to have become the policies of the MWCRCF and of these Defendants.

26.   Some of the policies, customs and practices, which constituted elements of the conditions of confinement in the MWCRCF, included, but were not limited to:

A)   Regularly denying, delaying or interfering with inmate requests for medical care;

B)   Ignoring, delaying or failing to promptly comply with the treatment orders of the doctors;

C)   Refusing to accommodate the known medical conditions of inmates;

D)   Not promptly providing reasonable medical care and treatment;

E)   Failing to have a doctor available to provide treatment for inmates on to diagnose and treat their medical conditions;

F)   Failing to transport inmates to hospitals for treatment of serious medical needs.

G)   Failing to ensure that guards checked on inmates who were in medical lockdown every 28-30 minutes.

H)   Inadequate and improper training, hiring, supervision and discipline of jailers.

27.   The policies, practices and customs set forth in the preceding paragraph, as well as others which may come to light in the course of this litigation, resulted in numerous, repeated and pervasive deprivations of inmates' rights to reasonable, adequate and timely medical care, under both the Eighth and Fourteenth Amendments, at the MWCRCF.

28.   Each of the foregoing policies, customs and practices were implemented, approved, ratified, known and/or constructively known by the officials of Marion County, including Hall, Mingo, Dement, Lewis, and Bennett and other Doe Defendants during the Decedent's confinement.

29. Each of the foregoing policies, customs and practices constituted elements of the conditions of the Decedent's confinement and, both individually and in combination, were moving forces in the deprivation of the Decedent's respective rights including his right to reasonable, adequate and timely medical care under the Eight and Fourteenth Amendment, his right as a pretrial detainee and not to be punished under the Fourteenth Amendment.

30. Defendants Marion County and the Doe Defendants are jointly and severally liable for Decedent's death. Plaintiffs seek recovery of all compensatory damages to which they are entitled as a result of the conditions of the Decedent confinement, and the damages he suffered therefrom. Plaintiffs further seeks recovery of punitive damages from Defendants Dement, Lewis, and Bennett and other Doe Defendants in their individual capacities for their callous and reckless disregard for the rights and welfare of the Decedent's medical needs.

## **SECOND 1983 CLAIM: EPISODIC ACTS OR OMISSIONS**

31. Plaintiffs incorporate all allegations set forth in Paragraphs 1 through 30 hereinabove.

32. Marion County, Hall, Mingo, Dement, Lewis, Bennett and other Doe Defendants maintained and operated a jail in such a manner as to cause the pervasive deprivation of inmate constitutional rights in every respect and at every level. The Decedent was forced to live in this jail and endure the action and inaction of its officials, as well as the jailers and jail staff acting in accordance with jail policies, customs and practices, under color of law, exhibiting callous and deliberate indifference, in depriving him of his rights guaranteed under the Constitution and laws of the United States.

33. Marion County, Hall, Mingo, Dement, Lewis, and Bennett as well as other jailers and jail staff acting pursuant to jail policy, practice and customs, created and required inmates to live in a jail that was deficient in so many respects that it was not suitable for human

confinement. These actions resulted in the infliction of punishment on each of the inmates who were forced to live there, including the Decedent.

34. As shown hereinabove, Marion County, by and through its policymakers, implemented and permitted many other policies, practices and customs that deprived most, if not all, inmates, including the Decedent, of their right to reasonable, adequate and timely medical care and especially their right not to be punished during their pretrial confinement. These included policies, customs and practices, whether written or unwritten, that were expressly announced, sanctioned and/or implemented by the Decedent as final policymaker of the MWCRCF. They also included policies, practices and customs which, though possibly not formally adopted, had become so widespread, well-settled and deeply imbedded in their application, use, employment and acceptance in the jail to have become the policies of these Defendants.

35. Some of the policies, customs and practices of the MWCRCF included, but were not limited to:

A)  Regularly denying, delaying or interfering with inmate requests for medical care during lockdowns;

B)  Regularly denying or delaying all inmate requests and doctor's orders for inmate medical care through a specialist;

C)  Ignoring, delaying or failing to promptly comply with the treatment orders of the jail doctor and/or outside physicians;

D)  Refusing to accommodate the serious medical conditions of inmates;

E)  Refusing to deliver an inmate's medication to that inmate; and

F)  Refusing to move seriously ill patients to a hospital or other location where they can receive appropriate care, instead leaving them in a jail cell and leaving no one but their cellmates to care for them.

G)  Failing to ensure that inmates in medical lockdown where checked on every 28-30 minutes.

H)    Inadequate and improper training, hiring, supervision and discipline of correctional officers.

36.    The policies, practices and customs set forth in the preceding paragraph, as well as others which may come to light in the course of this litigation, resulted in numerous, repeated, pervasive and persistent deprivations of inmates' rights to reasonable, adequate and timely medical care, under both the Eighth and Fourteenth Amendments, at the MWCRCF. The Decedent suffered numerous deprivations of his right to reasonable, adequate and timely medical care due to the actions of these policymakers, their policies, the jailers and the jail staff.

37.    Marion County and its employees/agents along with Dement, Bennett, and Lewis acted with deliberate indifference and callous and reckless disregard for the rights, welfare and medical needs of and other constitutional rights of the Plaintiff.

38.    Jailers and jail staff acted, or failed to act, pursuant to the official policies, customs and practices of Marion County and its policymakers, or at the direction of and with the approval of these officials, in depriving the Decedent of his rights as described herein. The policies, practices and customs were moving forces in the action and inaction for Dement, Lewis, Bennett, jailers, and jail staff, and these individuals acted with deliberate indifference to the rights, welfare and medical needs of and other constitutional rights of the Decedent.

39.    The deprivation of Decedent's rights, as described herein, directly and proximately caused the Decedent to suffer severe physical and mental personal injury and damages. These included permanent brain injury that left the Decedent in a vegetative state, excruciating pain and suffering, extraordinary mental and emotional pain and anguish, and significant disability and physical impairment which necessitated continuous medical care and treatment until his death.

40. Marion County, Dement, Lewis, Bennett and Doe Defendants are jointly and severally liable for the damages, Plaintiffs seek recovery of all compensatory damages to which they are entitled. Plaintiffs further seeks recovery of punitive damages from Dement, Lewis, Bennett, and Doe Defendants in their individual capacities for their callous and reckless disregard for the rights and welfare of the Decedent's medical needs.

### THIRD §1983 CLAIM: CLAIM AGAINST JAILERS

41. The Decedent was placed on medical watch due to his serious medical condition. There were no nurses on sight so the jailers were required to check on inmates who were on medical watch to insure that they were not suffering a medical emergency. Dement, Lewis, and Bennett were on duty during the early morning hours of September 25, 2016 and had, at certain times, performed security checks on the Decedent. Pursuant to MWCRCF policies and procedures, Dement, Lewis, and Bennett were required to conduct safety checks on the Decedent every 28-30 minutes. The jailers were also required to obtain some type of response from the Decedent to ensure he was alert and responsive. Bennet, Lewis, and Dement were subjectively aware that the Decedent was on medical watch due to his serious medical condition. However, Bennett, Lewis, and Dement failed to conduct medical checks every 28-30 minutes. The failure to conduct the required safety checks was done with deliberate indifference to the Decedent's constitutional rights and was objectively unreasonable. As a result, the Decedent suffered a seizure which left him in a vegetative state and ultimately led to his death.

### FOURTH 1983 CLAIM: RATIFICATION

42. Sheriff Hall and the other policymakers specified herein were advised about the Decedent's incident. Sheriff Hall and other policymakers ignored evidence of a disregard of policies and procedures intended for the protection of inmates including the Decedent, and deficiencies that violated the Decedent's constitutional rights. Based on information and belief, not

13

one officer, supervisor, nurse or any other person was disciplined, considered for discipline, or even retrained on policies intended for the protection of inmates. Instead, the policymakers approved the actions of the jailers and nurses and therefore ratified those actions.

43. Through these acts and omissions of ratification, Marion County policymakers were deliberately indifferent to the Decedent's constitutional rights as set forth herein. A plaintiff can establish a municipal liability claim by showing that a final municipal policymaker approved an investigation that was "so inadequate as to constitute a ratification" of the misconduct. *Wright v. City of Canton*, 138 F. Supp.2d 955, 966 (N.D. Ohio 2001). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). An isolated decision by a municipal official that is not intended to control future decisions can nonetheless give rise to municipal liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).

44. The ratification caused the Decedent injuries and damages and wrongful in whole or in part as set herein.

## PUNITIVE DAMAGES

45. The Plaintiffs incorporates all allegations set forth in Paragraphs 1 through 44 hereinabove.

46. Dement, Lewis, Bennett, and Doe Defendants 1-100's, in their individual capacities, acted in complete disregard for the safety of the Decedent by acting in a negligent and/or grossly negligent manner as previously described herein.  The actions of these Defendants warrant punitive damages.

47. Dement, Lewis, Bennett and the Doe Defendants' actions in their individual capacities exhibited gross negligence and direct disregard of the safety of the Decedent.  Punitive

14

damages should be awarded against these Defendants. Defendants' tortious actions caused the Decedent to suffer seizures which has led to him becoming a vegetable and caused his wrongful death.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, on behalf of the Decedent, request that upon a jury trial of this cause, the Court will award all relief due the Plaintiffs as set forth herein, including but not limited to the following:

A.  Order that the Defendants pay the Plaintiffs a sum in excess of $75,000 as compensatory damages arising from the aforesaid misconduct of Defendants as set forth herein, and enter judgment against Defendants and in favor of the Plaintiffs in the amount to be determined by a jury, or in such amount as found due and owing by the jury and/or this Court;

B.  Order that the Defendants pay to the Plaintiffs a sum in punitive damages sufficient to deter these Defendants and others similarly situated from like conduct in the future;

C.  Retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendants to file such reports as the Court deems necessary to evaluate such compliance;

D.  Order the Defendants to pay Plaintiffs' costs and expenses, including expert witness fees and reasonable attorney's fees, medical and burial expenses, and prejudgment interest on all amounts found due and owing, including, but not limited to, those attorney's fees found properly awardable pursuant to 42 U.S.C. § 1988(b); and

E.  Grant such other and further relief, of either an equitable or legal nature, to the Plaintiffs' as the Court deems just and proper.

RESPECTFULLY SUBMITTED, THIS the 22nd day of April, 2020.

                                                            LARRY HOLLAWAY, JR.,
CARLOS HOLLAWAY, and
THE ESTATE OF LOUIS HOLLOWAY,
PLAINTIFFS

                                        BY:   /s/ Charles R. Mullins
                                                  CHARLES R. MULLINS

OF COUNSEL:

Charles R. Mullins, MSB# 9821
COXWELL & ASSOCIATES, PLLC
Post Office Box 1337
Jackson, Mississippi 39215-1337
Telephone: (601) 948-1600
Facsimile: (601) 948-7097
chuckm@coxwelllaw.com

Carlos E. Moore, MSB #100685
The Cochran Firm MS Delta, PLLC
306 Branscome Drive
Grenada, MS 38902-1487
Telephone: (662) 227-9940
Facsimile: (662) 227-9941
cmoore@cochranfirm.com

Willie Abston, MSB #9935
Abston Law Firm
1307 Airport Road, Suite 1C
Flowood, MS 39232
Telephone: (601) 487-8839
Facsimile: (601) 487-8667
willie.abston@abstonlaw.com

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, Charles R. Mullins, attorney of record for the Plaintiffs in the above-styled and referenced matter, do hereby certify that I have this date electronically filed the above and foregoing, with the Clerk of the Court using the ECF system, which sent notification of such filing to all known counsel of record.

THIS, the 22nd day of April, 2020.

                                             /s/ *Charles R. Mullins*
                                            CHARLES R. MULLINS